**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LAMONT HALL, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 14-cv-06308 |
| | ) | |
| v. | ) | Hon. Matthew F. Kennelly |
| | ) | |
| ARTHUR FUNK, M.D. and WEXFORD | ) | |
| HEALTH SOURCES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>PLAINTIFF'S MOTIONS IN LIMINE</u>

Jack R. Bierig
Alison R. Leff
Joshua A. Fogarty
Tom Kayes
Peter D. McLaughlin
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036
jbierig@sidley.com
aleff@sidley.com
jfogarty@sidley.com
tkayes@sidley.com
peter.mclaughlin@sidley.com

*Counsel for Plaintiff*

## TABLE OF CONTENTS

I.     NO. 1: TO EXCLUDE EXPERT OPINIONS FROM TREATING MEDICAL PROFESSIONALS FORMED OUTSIDE THE COURSE OF TREATING PLAINTIFF. ...........................................................................................1

II.    NO. 2: TO EXCLUDE EXPERT OPINIONS FROM TREATING MEDICAL PROFESSIONALS BECAUSE DEFENDANTS' 26(A)(2)(C) DISCLOSURES ARE INADEQUATE. ...............................................................................3

III.   NO. 3: TO EXCLUDE THE EXPERT TESTIMONY OF DR. GREGORY BALES.4

       A.    Dr. Bales Should Be Barred from Testifying as to Legal Conclusions .............4

       B.    Dr. Bales' Opinion Regarding Defendants' Compliance with the Standard of Care Is Unreliable and Should Be Excluded ........................................................4

       C.    Dr. Bales Is Not Qualified to Opine about Plaintiff's Injury ............................7

IV.    NO. 4: TO EXCLUDE THE EXPERT TESTIMONY OF DR. DAVID MATHIS. ....8

V.     NO. 5: TO BAR DEFENDANT WEXFORD FROM OFFERING ANY EXPERT TESTIMONY FROM DEFENDANT FUNK...............................................................10

VI.    NO. 6: TO ADMIT THE REPORT OF PLAINTIFF'S LIABILITY EXPERT........10

VII.   NO. 7: TO ALLOW LEADING QUESTIONS WHEN PLAINTIFF CALLS CERTAIN TREATING MEDICAL PROFESSIONALS. ...........................................11

       A.    Defendant Funk..................................................................................................12

       B.    Schwarz .............................................................................................................12

       C.    Totonchi, Trammell, and Hollowell ..................................................................12

       D.    Chernoff and Kocjancic ....................................................................................12

VIII.  NO. 8: TO ALLOW LEADING QUESTIONS WHEN PLAINTIFF CALLS HIS LIABILITY EXPERT. ..............................................................................................13

IX.    NO. 9: TO BAR DEFENDANTS FROM USING LEADING QUESTIONS WHEN THEY CROSS-EXAMINE DEFENDANT FUNK AND SCHWARZ........................13

X.     NO. 10: TO EXCLUDE DEFENDANT FUNK'S SPECULATIVE TESTIMONY AS TO WHAT DOCTORS WADHWA, DEANE, AND KOCJANCIC KNEW OR DID NOT KNOW ABOUT TREATING PRISONERS. ......................................................14

XI.    NO. 11: TO EXCLUDE REFERENCES TO HOW HALL WAS SHOT. .................14

XII.     NO. 12: TO EXCLUDE ARGUMENT THAT PRISONERS VERBALLY
         HARASSED PLAINTIFF BECAUSE HE SHOT HIMSELF. ....................................16

XIII.    NO. 13: TO EXCLUDE REFERENCES TO PLAINTIFF'S CRIMINAL
         RECORD. ...........................................................................................................16

XIV.     NO. 14: TO EXCLUDE REFERENCES TO OTHER LAWSUITS FILED BY
         PLAINTIFF. .......................................................................................................19

XV.      NO. 15: TO EXCLUDE REFERENCES TO CONDUCT VIOLATIONS OR
         DISCIPLINARY HISTORY WHILE INCARCERATED. ......................................20

XVI.     NO. 16: TO BAR DEFENDANTS FROM PRESENTING EVIDENCE OF THEIR
         DECISIONS TO APPROVE OR DENY OTHER MEDICAL SERVICES UNDER
         RULE 404(B). .....................................................................................................21

XVII.    NO. 17: TO ALLOW PLAINTIFF TO APPEAR AT TRIAL IN NON-PRISON
         ATTIRE (UNOPPOSED). ...................................................................................22

XVIII.   NO. 18: TO ALLOW PLAINTIFF TO APPEAR AT TRIAL WITHOUT
         PHYSICAL RESTRAINTS (UNOPPOSED). ......................................................22

MEET AND CONFER .......................................................................................................23

CONCLUSION .................................................................................................................23

Plaintiff Lamont Hall respectfully moves *in limine* for the following pretrial orders:

## I.    NO. 1: TO EXCLUDE EXPERT OPINIONS FROM TREATING MEDICAL PROFESSIONALS FORMED OUTSIDE THE COURSE OF TREATING PLAINTIFF.

Defendants' disclosures suggest that they will attempt to elicit opinion testimony from the physicians and physician assistants who treated Plaintiff.  Ex. A, Defs.' Suppl. Rule 26(a)(2) Discls.  Treating witnesses like these may not offer opinions other than those formed during treatment, unless such opinions are disclosed in an expert report.  *In re Zimmer Nexgen Knee Implant Prods. Liab. Litig*., No. 2272, 2015 WL 3799534, at **4-8 (N.D. Ill. Jun. 17, 2015) (Pallmeyer, J.) ("*Meyers* dictates that any of [the treating physician's] opinions not formed in the course of treatment … are inadmissible if not disclosed in a complete expert report pursuant to Rule 26(a)(2)(B)") (citing *Meyers v. Nat'l R.R. Passenger Corp. (Amtrak)*, 619 F.3d 729, 734 (7th Cir. 2010)).  Here, none of the physicians or physician assistants who treated Plaintiff prepared expert reports.  Any opinions they formed outside the course of treating Plaintiff must therefore be excluded.  *Id*.; Fed. R. Civ. P. 37(c)(1).

Defendants should be barred from introducing such opinions. Defendants initially disclosed the following treating witnesses as non-retained experts: Arthur Funk, M.D., Mary Diane Schwarz, Allen Chernoff, M.D., Ervin Kocjancic, M.D., Courtney Hollowell, M.D., Emil Totonchi, M.D., Leslie Deane, M.D., Harpreet Wadhwa, M.D., and Rose Perry.  Ex. A at 1-6. Defendants' pretrial disclosures identified these and two additional medical professionals, Phillip Zaret, M.D. and Glen Trammell.  Ex. B, Defs.' Rule 26(a)(3) Discls.  Defendants' disclosures and deposition questions suggest they intend to elicit opinions that these witnesses did not form in the course of treating Plaintiff.  For example, the disclosures claim that Defendant Funk will offer various opinions "based upon his examination of the plaintiff *and his review of medical records*." Ex. A at 3 (emphasis added).  Because Defendant Funk did not have access to most of

1

Plaintiff's medical records until they were produced in this case, Funk cannot have formed opinions based on those records while treating Plaintiff. *See* Ex. C, 6/30/16 Funk Tr. 44:12-46:12.

Similarly, much of the testimony Defendants plan to elicit from the other treating witnesses is almost certainly inadmissible. For example, at Dr. Kocjancic's deposition, Defendants' counsel repeatedly asked Kocjancic to express opinions based on alleged facts that Dr. Kocjancic said he was not aware of. Ex. D, Kocjancic Tr. 82:13-83:14. 88:8-89:7. And counsel asked Dr. Chernoff for an opinion about medical terminology without connecting it to Dr. Chernoff's treatment of Plaintiff. Ex. E, Chernoff Tr. 88:20-89:7. Because the doctors neither prepared a report nor formed these opinions in the course of treating Plaintiff, these and similar post-treatment opinions must be excluded from trial. The need for excluding such testimony is underscored by the fact that neither Dr. Kocjancic nor Dr. Chernoff has any independent recollection of treating Plaintiff. Ex. D, Kocjancic Tr. 53:10-20, 55:17-21 (". . . I really do not remember a single thing about this guy."), 72:17-24; Ex. E, Chernoff Tr. 6:7-17, 86:24-87:11. Without such a recollection, they will be unable to credibly testify about which opinions, if any, they formed during Plaintiff's treatment. Without that foundation, none of their opinions would be admissible.

Because it is not possible to tell from Defendants' disclosure exactly which opinions Defendants intend to elicit from the treating physicians on their witness list, Plaintiff requests that the Court enter an order excluding opinions not formed during treatment. Such an order would establish where the line will be drawn for these witnesses. Plaintiff also requests that the Court's order adopt a protocol for laying and challenging foundation, *i.e.*, whether a particular opinion was formed during treatment. Some protocol is necessary to protect Plaintiff from the

unfair prejudice that would result if Defendants are allowed to elicit or suggest the substance of

an opinion in front of the jury, be it in opening or examination, before establishing that the

opinion was formed during treatment.  Plaintiff suggests that Defendants be required to provide a

list of opinions they intend to elicit the night before each witness is called to testify so that, if

necessary, the witness can be questioned outside the presence of the jury as to when he or she

formed the opinion.

II.     **NO. 2: TO EXCLUDE EXPERT OPINIONS FROM TREATING MEDICAL PROFESSIONALS BECAUSE DEFENDANTS' 26(a)(2)(C) DISCLOSURES ARE INADEQUATE.**

The Court should also bar Defendants from eliciting expert opinions that were formed

during the course of treating Plaintiff but not adequately disclosed under Rule 26(a)(2)(C).  A

party seeking to elicit expert testimony from a non-retained witness must disclose "the subject

matter on which the witness is expected to present evidence under Federal Rule of Evidence 702,

703, or 705" and "a summary of the facts and opinions to which the witness is expected to

testify."  Fed. R. Civ. P. 26(a)(2)(C).  This disclosure requirement cannot be satisfied by

referring to voluminous records and entire deposition transcripts.  *See, e.g.*, *Brunswick v.*

*Menard, Inc.*, No. 2:11 CV 247, 2013 WL 5291965, at *5 (N.D. Ind. Sept. 19, 2013) ("Turning

over medical records does not comply with the requirements of Rule 26(a)(2)(C).").  Here,

Defendants disclosed neither a summary nor a report for medical professionals Trammell or

Zaret.  Ex. A at *passim*.  Defendants therefore cannot introduce opinion testimony from either

witness.  Fed. R. Civ. P. 37(c)(1).  For Totonchi, Deane, Wadhwa, and Perry, medical

professionals who treated Plaintiff at Cook County Jail, UIC, and St. Francis, Defendants

disclosed boilerplate summaries that refer to medical records and, if the witness was deposed, the

deposition.  Ex. A at 1-6.  No particular medical record or lines of testimony are identified in

those summaries. *Id*. Because such disclosures are insufficient, Defendants may not offer expert testimony from these witnesses either. Fed. R. Civ. P. 37(c)(1).

## III.    NO. 3: TO EXCLUDE THE EXPERT TESTIMONY OF DR. GREGORY BALES.

None of the opinions offered by Defendants' retained expert, Dr. Gregory Bales, is admissible. As such, the Court should prohibit Dr. Bales from testifying at trial.

### A.    Dr. Bales Should Be Barred from Testifying as to Legal Conclusions.

In Dr. Bales' letter to Defendants' counsel—which Defendants served on Plaintiff as Dr. Bales' expert report—he improperly opines on the ultimate issues in this case: whether Defendants acted with deliberate indifference and committed malpractice. *See, e.g.*, Ex. F, Bales letter 1, 5. It is well established that "expert testimony as to legal conclusions that will determine the outcome of the case is inadmissible." *Good Shepherd Manor Found., Inc. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003). And, as the Seventh Circuit has explained, "even if such legal opinion testimony were permissible as a general matter," the testimony is inadmissible where, as in this case, the witness is "unqualified to give such testimony because [he] is not, and does not purport to be, a legal expert." *La Playita Cicero, Inc. v. Town of Cicero*, No. 11-cv-1702, 2017 WL 0051066, at *11 (N.D. Ill. Mar. 28, 2017).

### B.    Dr. Bales' Opinion Regarding Defendants' Compliance with the Standard of Care Is Unreliable and Should Be Excluded.

Dr. Bales' opinion that Defendants Funk and Wexford complied with the standard of care in denying Plaintiff a second stage urethroplasty, Ex. F, Bales letter 1, fails to comply with Federal Rule of Evidence 702(b) and (d) and also should be excluded. The opinion is not grounded in facts or data. Instead of disclosing his opinions in an annotated expert report, Dr. Bales wrote a roughly four-page letter to Defendants' counsel that broadly alludes to the case materials, but provides no citations to any scholarly article or textbook, or to the pleadings,

medical records, or 14 deposition transcripts he purports to have reviewed.[1]  As a result, it is

impossible to tie the factual basis for his opinions to anything in the medical literature or case

file; and alarmingly, his characterization of the facts is often either ungrounded in, or outright

contrary to, the record.  Dr. Bales has not "reliably applied the principles and methods" of his

profession "to the facts of the case."  Fed. R. Evid. 702(d).

      Dr. Bales offers two purported bases for his conclusion that Funk and Wexford acted

reasonably in denying Plaintiff his surgery: (1) Plaintiff could not be "guaranteed to receive

timely, scheduled follow-up visits with his reconstructive surgeon" while at NRC; and (2) NRC

is an inappropriate facility in which to convalesce.  Ex. F, Bales letter 2.  When asked at his

deposition for the facts supporting his opinion that Plaintiff could not receive appropriate follow-

up care at NRC, Dr. Bales testified: "Again, there's no references [in my letter]; but if we read

through the depositions of some of the doctors, including doctor—specifically Dr. Funk and Ms.

Schwartz [sic], I think it's clear that it wasn't—it wasn't absolutely determined whether he was

going to be in that one spot for a little while."  Ex. G, Bales Tr. 124:4-18.  But Ms. Schwarz

testified to the contrary: she authenticated her notation in the medical records indicating that

Plaintiff would be at NRC "for a long time," explaining that when a patient tells her, as Plaintiff

did, that he is serving time at NRC for a parole violation, "then I know they're going to be here a

long time."  Ex. H, Schwarz Tr. 90:13-92:23.

      Dr. Bales' testimony that Funk was the source of facts showing the unavailability of

follow-up care at NRC is equally shaky.  In his letter, Dr. Bales states, without citing any

---

[1] The Court may exclude Dr. Bales' testimony pursuant to Fed. R. Civ. P. 37(c) if it finds Dr. Bales' letter fails to comply with Fed. R. Civ. P. 26(a)(2)(B), which requires a party's expert disclosure to be "accompanied by a written report" that contains "a complete statement of all opinions the witness will express and the basis and reasons for them" and "the facts or data considered by witness in forming them."

document or testimony, that Funk "quite correctly understood that this reconstructive surgery would involve follow-up visits with a reconstructive surgeon." Ex. F, Bales letter 2. But Dr. Bales could not identify a medical record or other document demonstrating that Defendant Funk denied Plaintiff's surgery because of concern about the availability of follow-up care, conceding: "I can't point to a specific Statesville [sic] document that I can show you that indicates [Funk] believed specifically that. I can't show you that." Ex. G, Bales Tr. 153:23-154:7. Instead, Dr. Bales explained: "Well, I think in my interpretation from reading through [Funk's] deposition is that that was [Funk's] concern." *Id.* at 152:12-153:22. Dr. Bales' opinion about the unavailability of appropriate follow-up care at NRC is based on speculation and argument unsupported by evidence, and is therefore inadmissible. *See, e.g.*, *Hunt ex rel. Chiovari v. Dart*, 754 F. Supp. 2d 962, 972 (N.D. Ill. 2010).

As to the inadequacy of NRC as a place to convalesce, Dr. Bales' letter concludes, without citation: "It was critically important to be sure the reconstructive procedure was carried out in a setting where close, vigilant follow-up by the reconstructive surgeon could occur. Statesville [sic] NRC was not such a setting." Ex. F, Bales letter 5. Again, Dr. Bales' letter fails to elucidate the basis for that opinion. And again, he admitted that he had none:

> Q. Do you have any familiarity with Statesville [sic] NRC?
> A. No personal familiarity other than the little bit I gleaned from reading the medical records.
> Q. So do you know what the medical facilities there are like?
> A. Specifically, no.

Ex. G, Bales Tr. 142:11-17.

Dr. Bales' opinion about Funk's compliance with the standard of care is particularly problematic because instead of arising from facts and data, it appears to be based on his speculation about his fellow doctor's motive. For example, in his letter, Dr. Bales opines: "I

6

cannot envision any basis for suggesting negligence, indifference, or any callous disregard for Mr. Hall's well-being on the part of Dr. Funk and Wexford Health." Ex. F, Bales letter 3. This is because, according to Dr. Bales: "[Funk] was thinking that Mr. Hall would be best served by essentially just waiting a little bit to ensure that he got the best care . . . ." Ex. G, Bales Tr. 184:19-185:20. When asked for the factual basis supporting his belief about Funk's thoughts, Dr. Bales elaborated: "I think Dr. Funk just wanted Mr. Hall to be in a place where he could get the appropriate medical care. But it's not spelled out in the medical record." *Id*. at 186:3-17. Dr. Bales' hunch about Funk's motive is speculative and improper as a matter of law. *See, e.g.*, *In re Depakote*, No. 14-CV-847-NJR-SCW, 2015 WL 4775868, at *7 (S.D. Ill. Feb. 13, 2015) (noting in dicta, "Dr. Blume should not be permitted to give testimony regarding Abbott's motive, intent, or state of mind at trial").

As such, Dr. Bales' opinion about Defendants' compliance with the standard of care lacks the factual basis required for admissibility under Rule 702.

### C. Dr. Bales Is Not Qualified to Opine about Plaintiff's Injury.

Dr. Bales, a reconstructive urologist, is not qualified to rebut the testimony of Dr. Tiger Devore, a clinical psychologist, who opines that Plaintiff suffered extreme emotional distress as a result of Defendants' acts. Dr. Bales' view that it is "hard to fathom" that "the short wait, before Mr. Hall underwent his second stage reconstruction, caused additional distress," Ex. F, Bales letter 4, is completely untethered to his expertise. Ex. G, Bales Tr. 24:6-17. (Bales has no specific training in psychiatry.) That opinion runs afoul of Rule 702, which requires a witness to be "qualified as an expert by knowledge, skill, training, or education." *Cage v. City of Chicago*, 979 F. Supp. 2d 787, 822 (N.D. Ill. 2013) (observing that a "qualified individual may be barred under Rule 702 where the opinion proffered calls for speculation or expertise in a field outside of the expert's purview"). Dr. Bales is therefore unqualified to tell the jury, as he states in his letter,

that "none of the care and treatment at issue caused any injury to Mr. Hall." Ex. F, Bales letter 1;

*see, e.g.*, *Porter v. Whitehall Labs., Inc.*, 9 F.3d 607, 615 (7th Cir. 1993) (excluding expert's

opinion based on his admission "that such a conclusion was outside his area of expertise",

reasoning: "Because Dr. Benjamin did not possess the requisite scientific knowledge for his

testimony to be helpful to the jury, his testimony was properly excluded.").

## IV.     NO. 4: TO EXCLUDE THE EXPERT TESTIMONY OF DR. DAVID MATHIS.

The Court should exclude the testimony of Dr. David Mathis, whom Defendants offer as

an expert in "correctional medicine." Dr. Mathis formed the two opinions he plans to offer in

this case simply by reading and adopting as true any deposition testimony given in this case that

was favorable to Defendants. His opinions are quintessential inadmissible *ipse dixit*.

> [An] expert must substantiate his opinion, and not simply provide the ultimate
> conclusion without analysis. Either hands-on testing or review of experimental,
> statistical, or other scientific data gathered by others may suffice as a reasonable
> methodology for an opinion. The Court must make certain that an expert, whether
> basing the testimony upon professional studies or personal experience employs in the
> courtroom the same level of intellectual rigor that characterizes the practice of an
> expert in the relevant field.

*McCann v. Ill. Cent. R.R. Co.*, 711 F. Supp. 2d 861, 868 (C.D. Ill. 2010) (citing *Clark v. Takata*

*Corp.*, 192 F.3d 750, 757-59 (7th Cir. 1999) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137,

152(1999)) (internal quotation marks omitted).

Dr. Mathis first opines that Funk and Wexford "followed the Standard of Care . . .

applicable in a temporary placement correctional facility" by denying Plaintiff's second stage

surgery. Ex. I, Mathis report 9. To support that opinion, Dr. Mathis cites the deposition

testimony of Defendant Funk and Dr. Kocjancic. (*Id.*; *see also* Ex. J, Mathis Tr. 181:20-184:12.

According to Dr. Mathis, those doctors testified that because Plaintiff's surgery was elective and

NRC is a "transient facility without an infirmary," the standard of care prohibited them from

providing Plaintiff a second state urethroplasty. (Ex. J, Mathis Tr  9-10.) "While an expert can

rely on another expert's findings or opinions in developing his own opinions, he cannot simply adopt wholesale the ideas of another expert without any independent analysis." *In re Fluidmaster, Inc., Water Connector Components Prod. Liab. Litig.*, No. 14-CV-5696, 2017 WL 1196990, at *24 (N.D. Ill. Mar. 31, 2017). Yet that is exactly what Dr. Mathis has done: he has not performed any independent evaluation; he has no expertise in reconstructive urology or familiarity with the scientific literature of the field; and he has no firsthand knowledge of the patient or of NRC. Rather, as he explained, Dr. Mathis's "methodology" consisted of "looking at OCR PDFs" (Ex. J, Mathis Tr. 65:18-19)—that is, reading deposition transcripts.

Dr. Mathis conceded as much at his deposition, agreeing that none of the medical records indicate Defendants' concern for follow-up care, and explaining he nevertheless knew they had such a concern based on his "training and experience." *Id*. at 166:19-167:3. Dr. Mathis's testimony "offers nothing more than a 'bottom line' conclusion, [which] does not assist the trier of fact." *Clark*, 192 F.3d at 759 (citations omitted).

Dr. Mathis's second opinion, that Funk and Wexford "were not indifferent to the medical needs of Mr. Hall," is even more infirm. The opinion is stated in a single sentence and explained in three additional sentences, which announce that Plaintiff received medical care from Wexford employees at Stateville and doctors at UIC and that Wexford's utilization management team "consulted" with Plaintiff. Ex. I, Mathis report 11. Those sentences do not evidence analysis of the rigor required by Rule 702. The Seventh Circuit has recognized that a trial court is "well within its discretion to rule out [an expert] opinion, which was connected to existing data only by the *ipse dixit*, or bare assertion, of the expert." *Clark*, 192 F.3d at 759 (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 519 (1997)). Indeed, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data

9

only by the *ipse dixit* of the expert." *Joiner*, 522 U.S. at 146. This Court may exclude Dr. Mathis's expert testimony upon concluding "that there is simply too great an analytical gap between the data and the opinion proffered." *Id.* (citation omitted).

## V.  NO. 5: TO BAR DEFENDANT WEXFORD FROM OFFERING ANY EXPERT TESTIMONY FROM DEFENDANT FUNK.

A party cannot present the expert testimony of a witness "whose duties as the party's employee regularly involve giving expert testimony" without providing an expert report from that witness. Fed. R. Civ. P. 26(a)(2)(B); Fed. R. Civ. P. 37(c)(1). Here, Defendant Funk is an employee of Defendant Wexford. Ex. C, 6/30/16 Funk Tr. 9:1-3. One of Funk's duties is to regularly give expert testimony on Wexford's behalf. *See*, *e.g.*, *id.* at 7:16-8:17; Ex. K, 1/13/15 Funk Tr. 13:10-14:10 (testifying he has done "somewhere around 50" Rule 30(b)(6) depositions for Wexford and he does "the vast majority of Illinois 30(b)(6)"). And Wexford did not disclose a report from Funk. Accordingly, Wexford cannot rely on any expert testimony from Funk. Fed. R. Civ. P. 37(c)(1).

This ruling would only apply to Wexford, not to Funk himself because Funk is not his own employee. To the extent Funk is allowed to offer any expert testimony on his own behalf, Plaintiff requests an instruction to the jury explaining that such testimony may not be considered as to the claims against Wexford. Fed. R. Evid. 105.

## VI.  NO. 6: TO ADMIT THE REPORT OF PLAINTIFF'S LIABILITY EXPERT.

The Court should permit Plaintiff to introduce into evidence the report of its retained expert, a urologist who specializes in reconstructive surgery. (Plaintiff will refer to the expert as "the surgeon" in keeping with the Court's practice to avoid undue and unfair harm to the witness whose testimony is the subject of this motion.) While an expert's written report would ordinarily be inadmissible as hearsay, under Federal Rule of Evidence 801(d)(1)(A) a statement is *not*

hearsay if "[t]he declarant testifies and is subject to cross-examination about" the statement and the statement "is inconsistent with the declarant's testimony and was given under penalty of perjury . . . in a deposition." The surgeon has announced to the Court her intent to disavow at trial the opinions she gave during her deposition by testifying that she was unqualified to give those opinions. If the surgeon so testifies at trial, her expert report would be admissible under Rule 801(d)(1)(A) because the surgeon adopted her report during her deposition. *See, e.g.*, Ex. L, Surgeon Tr. 25.) The report was therefore effectively part of her prior testimony. As such, the surgeon testified and was subject to cross-examination about the report, and her trial testimony would be inconsistent with that prior testimony. Under those circumstances, the report would not be hearsay.

If the surgeon refuses to comply with the trial subpoena Plaintiff's counsel has served on the her lawyer, Plaintiff should be permitted to introduce the surgeon's report into evidence under Federal Rule of Evidence 804(b)(6), which creates an exception from the rule excluding hearsay for a "statement offered against a party that wrongfully caused . . . the declarant's unavailability as a witness, and did so intending that result." The report would be admissible if the surgeon were unavailable to testify at trial because defense counsel's aggressive questioning of the surgeon during her deposition—which included repeatedly putting before the witness the specter of adverse action by her professional association and her employer—was intended to and did result in her subsequent refusal to continue her work on Plaintiff's behalf.

## VII. NO. 7: TO ALLOW LEADING QUESTIONS WHEN PLAINTIFF CALLS CERTAIN TREATING MEDICAL PROFESSIONALS.

Plaintiff requests permission to use leading questions when he calls his treating medical professionals during his case-in-chief. Rule 611 permits leading questions "when a party calls a hostile witness, an adverse party, or a witness identified with an adverse party." Fed. R. Evid.

611(c).  All of these witnesses fall squarely within at least one of these classifications.

Furthermore, "the determination to proceed under Rule 611(c) is wholly within the district

court's discretion."  *Riverside Ins. Co. of Am. v. Smith*, 628 F.2d 1002, 1009 (7th Cir. 1980).

### A.    Defendant Funk

Since Funk is a defendant in the case, he is an adverse witness and it is appropriate to

interrogate him with leading questions.  Fed. R. Evid. 611(c).

### B.    Schwarz

As an employee of Wexford, Mary Schwarz is "identified with an adverse party" and it is

similarly appropriate to interrogate her with leading questions.  Fed. R. Evid. 611(c); *Ellis v. City

of Chi.*, 667 F.2d 606, 613 (7th Cir. 1981) (holding that current employees of the defendant who

were involved in the facts of the case are adverse witnesses to the plaintiff).

### C.    Totonchi, Trammell, and Hollowell

Leading questions are appropriate for former defendants Totonchi and Trammell, as well

as Dr. Hollowell, because they are all employed by the State of Illinois, which is itself a former

defendant in this case, and represented by the Illinois Attorney General's Office.  *See Ellis*, 667

F.2d at 613 (in section 1983 case, finding that the "district court should have permitted leading

questions during plaintiffs' direct examinations" of two witnesses who "worked closely with

defendant . . . during the period of their employment"); *see Ratliff v. City of Chi.*, No. 10 C 739,

2012 WL 7993412, at *1 (N.D. Ill. Nov. 20, 2012) (same).

### D.    Chernoff and Kocjancic

Lastly, Plaintiff should be allowed to interrogate doctors Chernoff and Kocjancic with

leading questions because they have both demonstrated hostility toward Plaintiff and his counsel.

Shortly after he was deposed, Dr. Kocjancic sent Plaintiff's counsel a letter in which he

complained that the two-hour deposition was a "gross misuse" of his time and the standard

witness fee of $43.36 was "extremely inappropriate." He also attempted to invoice Plaintiff at a rate of $500 per hour. Kocjancic's letter is attached as Exhibit M hereto. Dr. Chernoff demonstrated a similar level of hostility toward Plaintiff by contacting Plaintiff's counsel on March 16, 2018, and stating through his counsel that he would not testify at trial unless he was paid more than the standard witness fee for a fact witness.

## VIII. NO. 8: TO ALLOW LEADING QUESTIONS WHEN PLAINTIFF CALLS HIS LIABILITY EXPERT.

The Court should also permit Plaintiff to treat his liability expert as an adverse witness because she has informed counsel and the Court that she intends to testify at trial that she no longer believes it appropriate to maintain the opinions she offered in her expert report and during her deposition. The surgeon's intent to abandon her expert opinions at trial is tantamount to a witness's recantation of a sworn statement in the criminal context. This court permits the prosecution to treat its own witness as adverse during trial when the prosecution knows the witness will recant prior sworn statements inculpating the defendant. *See United States v. Young*, 316 F.3d 649, 654–55 (7th Cir. 2002) (noting that the government treated its witness, a kidnapping and domestic abuse victim, as hostile during the trial of her abuser because she denied her previous allegations and recanted her story). If the prosecution in a criminal case may treat its witness as hostile where the witness has announced her intention to disavow her previous sworn statements, Plaintiff should be permitted to treat the surgeon as hostile in his civil case.

## IX. NO. 9: TO BAR DEFENDANTS FROM USING LEADING QUESTIONS WHEN THEY CROSS-EXAMINE DEFENDANT FUNK AND SCHWARZ.

Defendants should not be allowed to use leading questions when they examine Defendant Funk and Mary Schwarz during Plaintiff's case-in-chief. Although leading questions may be used on cross-examination, Rule 611(c) permits a court to "deny[ ] the use of leading questions when the cross-examination is cross-examination in form only and not in fact, as for example the

'cross-examination' of a party by his own counsel after being called by the opponent." Fed. R.

Evid. 611 Advisory Committee Notes.

## X.  NO. 10: TO EXCLUDE DEFENDANT FUNK'S SPECULATIVE TESTIMONY AS TO WHAT DOCTORS WADHWA, DEANE, AND KOCJANCIC KNEW OR DID NOT KNOW ABOUT TREATING PRISONERS.

It is undisputed that doctors Wadhwa and Deane, urologists employed by UIC, saw

Plaintiff and recommended that he return to UIC in a month to meet with a urological surgeon.

It is also undisputed that UIC urological surgeon Kocjancic later met with Plaintiff and

recommended that he return in a month for surgery.  To attack these unfavorable facts, Plaintiff

expects Defendants Funk and Wexford to elicit testimony from (at least) Funk to the effect that

doctors Wadhwa, Deane, and Kocjancic would not have made their recommendations if they had

known more about treating prisoners.  *See* Ex. C, 6/30/16 Funk Tr. 151:7-156:4.  But Defendant

Funk has no personal knowledge about what these doctors knew or did not know.  *Id*. at 155:6-8,

Ex. N, Funk Resp. to Interrog. No. 8.  Defendant Funk's testimony about what the treating

physicians knew or did not know is therefore inadmissible and should be excluded.  Fed. R.

Evid. 602, 403.  The Court should also instruct Defendants' counsel not to elicit similarly

speculative testimony from other witnesses.

## XI.  NO. 11: TO EXCLUDE REFERENCES TO HOW HALL WAS SHOT.

The Court should exclude all references[2] to how Plaintiff sustained a gunshot wound to

his penis on November 18, 2012, including evidence, testimony, or argument stating, showing,

suggesting, or speculating that Plaintiff shot himself.  Such information is inadmissible under

Federal Rules of Evidence 401, 402, and 403.

---

[2] By excluding all "references," the Court would be excluding Defendants, Defendants' counsel, and/or any witness from questioning, arguing, mentioning, referring to in any way, or otherwise introducing into evidence.

How Plaintiff sustained a gunshot wound in November 2012 is entirely irrelevant to liability because it sheds no light on whether Defendants (1) consciously failed to take reasonable measures to provide treatment for Plaintiff's serious medical need; (2) harmed Plaintiff by failing to do something a reasonably careful doctor would do or doing something a reasonably careful doctor would not do; or (3) intentionally inflicted emotional distress on Plaintiff while he was incarcerated at NRC in 2013. As such, information concerning how Plaintiff came to sustain a gunshot wound to his penis is inadmissible as irrelevant. Fed. R. Evid. 401, 402.

Evidence that Plaintiff shot himself in 2012 has no probative value for any issue the jury must decide and would instead only serve to incite the passions of the jury against Plaintiff. Indeed, Defendants' questioning of witnesses during depositions in this matter revealed that they intend use the fact that Plaintiff may have a self-inflicted wound to impugn Plaintiff's character and otherwise bias the jury against him. *See, e.g.*, Ex. O, Devore Tr. 147:9-16 ("Q. Right. So the ladies and gentlemen of the jury are supposed to believe that Lamont Hall, who shot himself in the penis while illegally carrying a gun and then broke into a woman's house, threatened to kill her and her four children, gets arrested, goes back to jail and he's sensitive enough that ridicule from other inmates somehow causes him mental anguish?"), 167:2-6 ("Q. Okay. And I get that, but you're not going to compare Lamont Hall to a soldier who goes out to fight a war. He shot himself in the penis while he was illegally carrying a gun. That's not the same thing."). For those reasons, information regarding how Plaintiff came to sustain a gunshot wound to his penis is also inadmissible under Rule 403 as substantially more unfairly prejudicial than probative of any relevant fact.

## XII.   NO. 12: TO EXCLUDE ARGUMENT THAT PRISONERS VERBALLY HARASSED PLAINTIFF BECAUSE HE SHOT HIMSELF.

Defendants Wexford and Funk questioned Hall at his deposition as to whether other prisoners verbally harassed him because he shot himself: "Now, were they ridiculing you because you had done this to yourself, that you had shot yourself, or were they ridiculing you because of the catheterization?"  Ex. P, Hall Tr. 59:13-60:8.  This line of questioning should be excluded from trial because "[c]ross-examiners must have a good faith basis for their questions . . . ."  *Oostendorp v. Khanna*, 937 F.2d 1177, 1181 (7th Cir. 1991).  Here, there is no good-faith basis to assert the other prisoners were harassing Plaintiff because he shot himself.  There are no disclosed documents or witnesses that suggest any prisoner who harassed Plaintiff knew, suspected, or had a reason to suspect that Plaintiff had shot himself.  Plaintiff will testify other prisoners harassed him because they could see the hole in his penis when he washed himself at the shared sink in his cell and because he had to sit down to pee.  Accordingly, Defendants Funk and Wexford have no good-faith basis for this questioning and it and any related argument should be barred.

## XIII.   NO. 13: TO EXCLUDE REFERENCES TO PLAINTIFF'S CRIMINAL RECORD.

The Court should exclude evidence, testimony, or argument regarding the nature of Plaintiff's arrests, criminal charges, and convictions in 2008 for armed robbery with a firearm and in 2013 for felony possession of a firearm.  Such information is inadmissible under Rules 401, 402, 403, and 609 because it is irrelevant to the claims and defenses at issue, and its prejudicial effect far outweighs any probative value from offering the information to the jury.

Any information about Plaintiff's arrests, charges, and convictions is inadmissible as substantive evidence.[3] Facts that are not "of consequence in determining the action" are irrelevant. Fed. R. Evid. 401. "Irrelevant evidence is not admissible." Fed. R. Evid. 402. Here, substantive evidence of Plaintiff's prior arrests, charges, and convictions is irrelevant to whether Defendants (1) consciously failed to take reasonable measures to provide treatment for Plaintiff's serious medical need; (2) harmed Plaintiff by failing to do something a reasonably careful doctor would do or doing something a reasonably careful doctor would not do; or (3) intentionally inflicted emotional distress on Plaintiff while he was incarcerated at NRC in 2013. It is therefore inadmissible under Federal Rules of Evidence 401 and 402 and the Court should exclude substantive evidence of the nature of Plaintiff's prior arrests, charges, or convictions.

Nor is evidence of Plaintiff's criminal history admissible for impeachment purposes. Under Rule 609(a)(1), evidence that a party witness has been convicted of a felony may be admitted for the purpose of impeachment, ***subject to*** Rule 403. Fed. R. Evid. 609(a)(1). Rule 403, in turn, provides that evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Courts in this circuit have repeatedly held that evidence of a § 1983 plaintiff's criminal history is shielded by Rule 403 from disclosure for impeachment purposes because its prejudicial effect outweighs its probative value. *See, e.g.*,

---

[3] In November 2008, Plaintiff was convicted of armed robbery with a firearm and was sentenced to six years in the Illinois Department of Corrections ("IDOC"). Ex. Q, Plaintiff's sentencing history. Plaintiff was released on parole in June 2011. While on parole, Plaintiff was arrested and charged with home invasion with a firearm around February 5, 2013. Plaintiff was found in violation of the terms of his parole and incarcerated at NRC from February 8, 2013 through October 4, 2013 to serve out the remainder of his 2008 sentence. From October 2013 to April 2016, while his 2013 criminal case was pending, Plaintiff was detained at Cook County Jail. Around April 2016, Plaintiff accepted a plea deal for the charge felony possession of a firearm and is currently serving a 14-year sentence at Dixon Correctional Center.

*Bruce v. City of Chicago*, No. 09 C 4837, 2011 WL 3471074, at *10-11 (N.D. Ill. July 29, 2011)

("[C]ourts should be careful to ensure that a civil rights plaintiff's criminal past is not used to

unfairly prejudice him or her.") (quoting *Gora v. Costa*, 971 F.2d 1325, 1331 (7th Cir. 1992));

*Brandon v. Vill. of Maywood*, 179 F. Supp. 2d 847, 854 (N.D. Ill. 2001). As in those cases, here,

allowing Defendants to present the jury with evidence of Plaintiff's criminal history would

unfairly turn the focus of the trial to Plaintiff's past conduct. *See Hernandez v. Cepeda*, 860 F.2d

260, 264 (7th Cir. 1988) (noting that limitations on use of prior felony convictions "are designed

to ensure that evidence of a prior conviction is not used to impermissibly shift the focus of the

trial to the witness's past conduct"). Such evidence would also create "unfair prejudice, confuse

the issues, [and] mislead[] the jury." *See* Fed. R. Evid. 403. If the jurors hear the details of

Plaintiff's past convictions, their judgment of Plaintiff may be skewed in a manner that impedes

their ability to adjudicate this case fairly. *See Coles v. City of Chi.*, No. 02 C 9246, 2005 WL

1785326, at *2-3 (N.D. Ill. July 22, 2005) (excluding evidence of prior conviction of armed

robbery in Section 1983 case). As such, Defendants cannot meet their burden in this case "of

proving that the probative value of the conviction evidence on [Plaintiff's] credibility is not

outweighed by any unfair prejudice from admission of such evidence." *Id.* (citing *Campbell v.*

*Greer*, 831 F.2d 700, 705 (7th Cir. 1987)).

Moreover, since Plaintiff has never been convicted of a crime involving dishonesty or a

false statement, Defendants may not invoke Rule 609(a)(2) to use evidence of his prior

convictions to attack his character for truthfulness. Courts have repeatedly held that convictions

for crimes like aggravated robbery, robbery, and felony weapon possession are not admissible as

crimes of dishonesty or false statement. *See, e.g.*, *Fermazin v. Menard, Inc.*, No. 15 C 7272,

2017 WL 1227937, at *4 (N.D. Ill. Mar. 31, 2017) ("[C]ourts in this circuit have repeatedly held

18

that certain kinds of theft, including . . . robbery, are not inherently crimes of dishonesty under Rule 609(a)(2).").  Because none of Plaintiff's prior convictions involve dishonesty or a false statement, Defendants may not introduce evidence of Plaintiff's criminal record under Rule 609(a)(2) to attack his credibility.

Plaintiff recognizes that it will be impossible to shield the jury from the facts that he: (1) was arrested in February 2013, (2) was incarcerated at NRC from February 8, 2013 through October 4, 2013 for violating the terms of his parole, and (3) eventually received the second stage urethroplasty while detained at Cook County Jail in 2014.  But Plaintiff requests that the Court limit such evidence to the fact and dates of his arrest and confinement.

## XIV.  NO. 14: TO EXCLUDE REFERENCES TO OTHER LAWSUITS FILED BY PLAINTIFF.

The Court should exclude any reference to lawsuits Plaintiff has filed other than the instant action.[4]  Plaintiff's filing of prior or subsequent lawsuits is plainly irrelevant to the issues in this case because it does not make it any more or less probable that Defendants (1) consciously failed to take reasonable measures to provide treatment for Plaintiff's serious medical need; (2) harmed Plaintiff by failing to do something a reasonably careful doctor would do or doing something a reasonably careful doctor would not do; or (3) intentionally inflicted emotional distress on Plaintiff while he was incarcerated at NRC in 2013.

---

[4] In September 2008, Plaintiff filed *Hall v. Fagus*, No. 08-cv-5294, a *pro se* action involving failure to provide psychiatric medication that was entirely unrelated to the present case.  That case was dismissed pursuant to settlement in April 2009.  In December 2013, Plaintiff filed *pro se Hall v. Wexford Health Source*, No. 13-cv-9290, which concerned the events that are the subject of the instant action.  On February 7, 2014, Judge Der-Yeghiayan dismissed Case No. 13-cv-9290 *sua sponte*, before any defendants were served, without prejudice to refile, based on a mistake Plaintiff made on his complaint form.  (ECF No. 66 at 2–3.)  Plaintiff filed *pro se* the instant action, *Hall v. Funk*, No. 14-cv-6308 in August 2014.  Finally, in October 2014, Plaintiff filed *pro se Hall v. Cook County*, No. 14-cv-7887, concerning the medical care he received while incarcerated at Cook County Jail after transferring there in October 2013.  The parties settled Case No. 14-cv-7887 in June 2016.

Because it's entirely irrelevant, evidence of Plaintiff's prior and subsequent lawsuits would serve only to paint Plaintiff as a frequent litigant, a purpose for which it is inadmissible. *See* Fed. R. Evid. 404(b)(1) ("Evidence of . . . [an]other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character"). Under Rule 404(b)(1), courts routinely exclude evidence of a plaintiff's other lawsuits when defendants seek to use such evidence to establish the plaintiff's litigious character. *See Mathis v. Phillips Chevrolet, Inc.*, 269 F.3d 771, 775 (7th Cir. 2001) (evidence of plaintiff's prior lawsuits is not admissible to show the plaintiff's propensity to file lawsuits).

Evidence of Plaintiff's prior and subsequent filings may also be excluded under Rule 403 because the probative value of such evidence, if there is any, "is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, [and] wasting time." Fed. R. Evid. 403. As the Seventh Circuit has explained, "a plaintiff's litigiousness may have some slight probative value, but that value is outweighed by the substantial danger of jury bias against the chronic litigant." *Mathis*, 269 F.3d at 776 (internal citations omitted); *see also Raysor v. Port Auth. of N.Y. & N. J.*, 768 F.2d 34, 40 (2d Cir. 1985). Here, evidence of Plaintiff's other lawsuits is entirely irrelevant to any issue the jury must decide and would serve simply to incite the passions of the jury against Plaintiff.

## XV.    NO. 15: TO EXCLUDE REFERENCES TO CONDUCT VIOLATIONS OR DISCIPLINARY HISTORY WHILE INCARCERATED.

Defendants should be barred from introducing evidence or eliciting testimony regarding Plaintiff's conduct while in custody and/or disciplinary actions taken against him during his incarcerations in an attempt to impeach his credibility. Such evidence is generally inadmissible in a civil rights case. *Gomez v. Palmer*, No. 11 C 1793, 2016 WL 212800, at *1, *3-4 (N. D. Ill. Jan. 19, 2016) (barring evidence of prisoner-plaintiff's disciplinary records because they "are not

relevant to his claims and do not bear on his credibility or veracity"). In addition to lacking any probative value, the evidence would be highly prejudicial because Defendants will likely rely on such evidence to improperly suggest that Plaintiff is prone to misconduct with the hope that the jury might render a lesser verdict based on this information. Fed. R. Evid. 403; *see also Gomez*, 2016 WL 212800, at *3-4 (excluding evidence of disciplinary record even though plaintiff's status as a gang leader explained why he was in a lockdown facility during the time he alleged his constitutional rights were violated). Evidence of Plaintiff's conduct violations and/or disciplinary history is also inadmissible under Federal Rule of Evidence 404(b), which prohibits "[e]vidence of a crime, wrong, or other act to . . . to prove a person's character in order to show" action in conformity therewith. Fed. R. Evid. 404(b); *U. S. v. McCarthur*, 6 F.3d 1270, 1279 (7th Cir. 1993); s*ee Gomez*, 2016 WL 212800, at *3-4.

## XVI.  NO. 16: TO BAR DEFENDANTS FROM PRESENTING EVIDENCE OF THEIR DECISIONS TO APPROVE OR DENY OTHER MEDICAL SERVICES UNDER RULE 404(B).

Defendants Funk and Wexford should be barred from offering evidence of medical services they have allowed or denied in an attempt to show they have a record of providing appropriate medical  care to inmates and , on the occasions they denied care to Plaintiff, they were doing the same. "Evidence of a … other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1); *United States v. Gomez*, 763 F.3d 845, 856 (7th Cir. 2014) (en banc). Accordingly, the Court should enter an order precluding Defendants from introducing such evidence.  This case is about the care provided to Plaintiff, not care provided to others.

## XVII.  NO. 17: TO ALLOW PLAINTIFF TO APPEAR AT TRIAL IN NON-PRISON ATTIRE (UNOPPOSED).

Defendants do not object to this motion.  The Court should enter an order allowing Plaintiff to appear in non-prison attire during trial.  A prisoner-litigant has a strong interest in appearing before a jury in non-prison clothing.  *Ramirez v. Delong*, No. 09-cv-314-bbc, 2010 WL 3118527, at *1 (W.D. Wis. July 30, 2010).  This is because "the infamous orange jump suit may have an important, if subtle, effect on the way a juror perceives the plaintiff, serving as a 'constant reminder' that the prisoner is in a different class from the other litigants and suggesting he is entitled to less respect."  *Id.*; *see Estelle v. Williams*, 425 U.S. 501, 504 (1976) (holding that criminal defendants have a constitutional right to appear at trial in non-prison clothing).

In this case, requiring Plaintiff to appear at trial in prison attire would unfairly prejudice him before the jury and distract the jury from the real issue in this case—whether Defendants violated Plaintiff's constitutional rights, committed professional negligence, and/or intentionally inflicted emotional distress on Plaintiff.  Allowing Plaintiff to appear in non-prison clothing will not present a security risk, as Plaintiff has no history of being disruptive or attempting escape, and any legitimate security concerns will be addressed by the presence of U.S. Marshals in the courtroom.  The Court should therefore allow Plaintiff to wear non-prison clothing at trial.

## XVIII. NO. 18: TO ALLOW PLAINTIFF TO APPEAR AT TRIAL WITHOUT PHYSICAL RESTRAINTS (UNOPPOSED).

Defendants do not object to this motion.  The Court should enter an order allowing Plaintiff to appear free of physical restraints, such as handcuffs and/or shackles, during trial.  A prisoner-litigant has "the right to appear before a jury free from shackles or other physical restraints."  *United States v. Van Sach*, 458 F.3d 694, 699 (7th Cir. 2006); *see Woods v. Thieret*, 5 F.3d 244, 246 (7th Cir. 1993) (observing principle's applicability to "not just criminal defendants, but inmates bringing civil actions . . . as well.").  Although not absolute, this right

22

can only be overcome by showing an "extreme need" for physical restraints. *Illinois v. Allen*, 397 U.S. 337, 344 (1970); *Woods*, 5 F.3d at 274; *Lemons v. Skidmore*, 985 F.2d 354, 357-58 (7th Cir. 1993). An "extreme need" is one necessary to maintaining the courtroom's security, and the relevant inquiry is assessing the prisoner-litigant's "'history of violence in the face of maximum security precautions.'" *Lemons*, 985 F.2d at 358 (quoting *United States v. Amaro*, 816 F.2d 284, 285 (7th Cir. 1987)). Plaintiff has no history of disruptive or violent behavior in prison. The Court should therefore allow Plaintiff to be free from physical restraints, such as handcuffs and/or shackles, during trial.

## MEET AND CONFER

In accordance with the Court's standing order, counsel for both Plaintiff and Defendants met and conferred on these motions at 10:00 AM on March 22, 2018. Defendants represented that they expect to object to all motions herein except numbers 17 and 18, which do not concern the admission or exclusion of evidence.

## CONCLUSION

WHEREFORE, for the above reasons, Plaintiff respectfully requests this Court grant his Motions *in Limine*.

Dated: March 22, 2018        Respectfully submitted,

LAMONT HALL

By: */s/ Joshua A. Fogarty*
One of His Attorneys

23

## <u>CERTIFICATE OF SERVICE</u>

       I, Joshua A. Fogarty, hereby certify that on March 22, 2018, I caused a copy of Plaintiff's Motions in Limine and Exhibits to be served on all counsel of record through the Court's CM/ECF system.


                                               */s/ Joshua A. Fogarty*
                                               Joshua A. Fogarty